UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| Vance Pascua,<br><br>    Plaintiff,<br><br> -against-<br><br>Experian Information Solutions, Inc., and Upstart Network, Inc.,<br><br>    Defendant(s). | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

 Plaintiff Vance Pascua, by and through counsel, as and for this Complaint against Defendants Experian Information Solutions, Inc. ("Experian," or "Bureau"), and Upstart Network, Inc. ("Upstart" or "Furnisher"), respectfully sets forth, complains, and alleges, upon information and belief, the following:

 1. Plaintiff brings this action for damages arising from each Defendant's violations of 15 U.S.C. § 1681 *et seq.*, the Fair Credit Reporting Act ("FCRA").

 2. As described more fully below, each Defendant improperly reported a balance and delinquency for an account on Plaintiff's credit report that was the result of fraud.

 3. Plaintiff disputed the account providing the necessary documentation.

 4. Defendants failed correct the inaccuracies.

 5. Plaintiff was thereby damaged.

## JURISDICTION AND VENUE

 6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p *et seq*.

 7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred here, the Plaintiff resides here, and the Defendants transact business here.

## PARTIES

8. Plaintiff is a resident of Hawaii, County of Kauai.

9. At all times material hereto, Plaintiff was a "consumer" as said term is defined by 15 U.S.C. § 1681a(c).

10. Defendant Experian Information Solutions, Inc., is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

11. Experian is an Ohio corporation registered to do business in this State.

12. Experian may be served with process c/o CT Corporation System, 900 Fort Street Mall, Suite 1680, Honolulu, HI 96813.

13. Experian is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

14. At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

15. Defendant Upstart is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

16. Upstart has an address for service at c/o Corporation Service Company, 1003 Bishop Street, Suite 1600, Pauahi Tower, Honolulu, HI 96813.

## FACTUAL ALLEGATIONS

17. Plaintiff incorporates the above allegations as if set forth here.

### Background

18. Plaintiff is a victim of fraud and identity theft.

19. On or about June 28, 2023, Plaintiff applied for what he believed to be a grant.

20. Plaintiff gave his personal information to an April Palau.

21. Unbeknownst to him, it now appears that the person known as April Palau is a con artist and identity thief.

22. On or about June 29, 2023, Plaintiff was approved for the grant and received a deposit for the amount of $11,352.00 to his bank account.

23. Plaintiff was told by April Palau that this was the first deposit of his larger grant for which he had been approved.

24. April Palau and Plaintiff had some further communications about handling the funds and discussion about further funds.

25. April Palau convinced Plaintiff to send funds to other accounts in order to facilitate receipt of the additional grant funds.

26. Plaintiff did not receive the additional grant funds.

27. At some point Plaintiff realized he was the victim of a sophisticated fraudulent enterprise.

28. Plaintiff reported this identity theft.

29. When Plaintiff became aware of the fraudulent account and balance, he reported the crimes to law enforcement

30. On July 21, 2023, Plaintiff reported this crime to the Kauai Police Department.

31. The crime against Plaintiff is documented in Kauai Police Department Police Report ("Police Report").

32. The Police Report Incident # is 23-09571.

33. The crime was reported to Office Bruce A. Nance of the Kauai Police Department.

34. Officer Nance was assigned to investigate this Identity Theft case.

35. Making a false police report subjects a person to potential prison and/or thousands of dollars in fines.

36. A Police Report is acceptable proof of identity theft to block items in a consumer's credit report as disputed for being fraudulent.

37. Upon receipt of notice of identity theft, the Bureau is required to block the disputed information pursuant to 15 U.S.C. § 1681c-2.

38. Plaintiff also received by mail a loan agreement.

39. There was a loan funded by Finwise Bank in Plaintiff's name, account number beginning with FW3867… ("Account" or "Loan").

40. The Account was opened with Upstart and funded by Finwise.

41. Plaintiff did not apply for the Loan.

42. Plaintiff did not provide his personal information to Upstart or Finwise for the Loan.

43. Plaintiff did not sign for the Loan.

44. Plaintiff did not agree to be responsible for the Loan.

45. Plaintiff was unaware of the Loan until he received the agreement with his forged electronic signature thereon.

46. Plaintiff did not authorize anyone to apply for the Loan or sign on his behalf.

47. Upon information and belief, April Palau fraudulently applied for and signed for the loan in Plaintiff's name without his knowledge or consent.

48. Unbeknownst to Plaintiff, his personal information was used to enter into a loan agreement he did not authorize.

49. The Agreement was electronically signed.

4

50. Plaintiff did not authorize his signature for the Agreement.

51. Because Plaintiff did not incur this debt, he did not pay the balance.

52. The Account was then appearing on his Experian credit report.

53. The Account was appearing on his Experian credit report with a balance of $13,412.00.

54. The Account was also appearing on Plaintiff's credit report from non-party TransUnion.

55. Yet, the balance on the Account was not from Plaintiff.

56. It was fraudulently incurred without his approval.

57. Plaintiff did not authorize anyone to open the Account.

58. Plaintiff did not enter into a transaction with Furnisher, or anyone, for the Account.

59. Plaintiff is a victim of fraud and identity theft.

## Violations

60. In a letter dated September 13, 2023, Plaintiff disputed the veracity of the reporting and described how he is a victim of identity theft. ("Dispute").

61. Plaintiff sent his Dispute to the Bureau.

62. Plaintiff also sent his Dispute to non-party TransUnion.

63. In his Dispute, Plaintiff included a description of the identity theft, a copy of the Police Report, a copy of his ID, his social security information, and his address.

64. The Bureau and TransUnion are each required by law to notify Furnisher of Plaintiff's dispute(s).

65. It appears and is therefore averred that the Bureau notified Furnisher of Plaintiff's dispute(s).

66. It appears and is therefore averred that TransUnion notified Furnisher of Plaintiff's dispute(s).

67. In response to Plaintiff's Dispute, TransUnion deleted the fraudulent Account from his TransUnion credit report.

68. Despite the Dispute, and subsequent to it, the Account and fraudulent balance remained on Plaintiff's credit report from the Bureau.

69. Despite being on notice from Plaintiff upon receipt of the Dispute(s), Furnisher was reporting the Account and balance to the Bureau.

70. Upstart mailed Plaintiff a letter dated September 26, 2023 ("Letter") acknowledging the Account was fraudulently opened.

71. Upstart's Letter stated "Our investigation determined you are not the individual who took out the Upstart Loan, FW386[…] on 6/28/2023, and are therefore not responsible for this debt."

72. Upstart's Letter continued, "As a result, we submitted requests to have your credit updated to TransUnion, Equifax, and Experian."

73. Incredibly, despite this acknowledgment of the truth, Defendants continued reporting the account on Plaintiff's Experian credit report.

74. The Bureau was reporting the Account and balance on Plaintiff's credit reports.

75. On information and belief, on date(s) better known to the Bureau, it issued credit reports concerning the Plaintiff that included the Account and incorrect balance.

76. On information and belief, on date(s) better known to the Bureau, it issued credit reports concerning the Plaintiff that included Accounts tradelines.

77. The information furnished by Furnisher and published by the Bureau was inaccurate.

78. The Bureau had been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

79. Upon receipt of the dispute(s) of the account by the Plaintiff from the Bureau, Furnisher failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to their respective disputed Accounts.

80. Had Furnisher conducted a reasonable investigation it would have been revealed to it that its Account information was inaccurate.

81. Furnisher in fact acknowledged that its Account information was inaccurate yet it continued to report it on Plaintiff's Experian credit report.

82. A reasonable investigation by each Defendant would have revealed that each respective Account is being incorrectly reported.

83. Defendants were in receipt of the evidence showing that the reported information was inaccurate.

84. Upstart acknowledged that the evidence showed that the reported information was inaccurate

85. The Bureau was in receipt of information showing the information reported by Furnisher was inaccurate.

86. Despite the Dispute(s) by the Plaintiff that the information on his consumer report was inaccurate with respect to the disputed Accounts, each Defendants did not evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not make an attempt

7

to substantially reasonably verify that the derogatory information concerning the disputed account(s) was inaccurate.

87. Defendants continued to report the fraudulent Account and balance.

88. Each Defendant did not even call Plaintiff to discuss his claims.

89. Each Defendant did not even email Plaintiff to discuss his claims.

90. Each Defendant did not even mail correspondence to Plaintiff to discuss his claims and to conduct its investigation or reinvestigation of the Accounts.

91. Each Defendant did not reach out to Plaintiff to discuss why they would continue reporting the Account despite its acknowledged fraudulent basis.

92. Upon information and belief, each Defendant did not call the Kauai Police Department to discuss the matter.

93. Upon information and belief, each Defendant did not email the Kauai Police Department to discuss the matter.

94. Upon information and belief, each Defendant did not mail any correspondence to the Kauai Police Department to discuss the matter.

95. Upon information and belief, each Defendant did not call Office Nance of the Kauai Police Department to discuss the matter.

96. Upon information and belief, each Defendant did not email Office Nance of the Kauai Police Department to discuss the matter.

97. Upon information and belief, each Defendant did not mail any correspondence to Office Nance of the Kauai Police Department to discuss the matter.

98. The Bureau's actions described herein violated 15 U.S.C. § 1681i.

99. The Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report.

100. The Bureau further violated 15 U.S.C. § 1681c-2 (a) (Block of information resulting from identity theft).

101. Furnisher' actions described herein violated 15 U.S.C. 1681s-2 (b).

102. Notwithstanding Plaintiff's efforts, each Defendant continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

103. Each Defendant knew the information was inaccurate.

104. Each Defendant was in possession of the documentation of the inaccuracies and fraud of the Account yet persisted in reporting it anyway.

105. Upon information and belief, the Bureau did not request any supporting documentation from Furnisher during its investigation(s) of Plaintiff's Dispute(s)

106. Upon information and belief, Furnisher did not send any documentation to the Bureau during its investigation(s) of Plaintiff's Dispute(s).

107. Furnisher continued to furnish credit data which is inaccurate and materially misleading, and the Bureau's reporting of the above-referenced tradeline(s) continued to be inaccurate and materially misleading.

## Damages

108. As a result of each Defendant's failure to comply with the FCRA, Plaintiff has been damaged.

109. Each Defendant's erroneous reporting continues to affect Plaintiff's reputation, creditworthiness, and credit score.

110. Plaintiff suffered damage to his reputation as it falsely appears as if he is delinquent on the Account when he is not.

111. It also falsely appears as if Plaintiff owes money on the Account.

112. This false information was published to numerous third-parties.

113. This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's lawful financial affairs.

114. Plaintiff has, inter alia, suffered damage by loss of time and money in trying to rectify each Defendant's willful and negligent actions, loss of credit, loss of ability to purchase and benefit from credit, reputational harm, decreased credit score, a chilling effect on applications for credit, and the mental and emotional pain, anguish, humiliation, and embarrassment for having false information on his credit report, for credit denial, and for having others see the false credit information..

115. Plaintiff was denied funding opportunities due to each Defendant's actions.

116. The Account is the only account reporting as a collection account or charge off.

117. Other than a single missed payment from years ago on one other Account, the Account is the only negative information appearing on Plaintiff's credit report.

118. Plaintiff's credit would essentially be pristine without these fraudulent Accounts.

119. When applying for a loan from SoFi, Plaintiff was denied inter alia for:

    a. Serious delinquency

    b. Time since delinquency is too recent or unknown.

120. Yet the Account is the only 'serious delinquency' on Plaintiff's credit report.

121. When applying for a loan from PenFed, Plaintiff was approved, but the rate was the highest rate offered by PenFed, due, in whole or in part, to each Defendant's actions described above.

122. The rate was 17.99% or 16.99% APR.

123. The loan was therefore unaffordable.

124. The denial and unaffordable rate caused Plaintiff to suffer tangible and intangible losses of lack of available credit.

125. Plaintiff American Savings Bank account was also closed due to this fraudulent activity.

126. Plaintiff suffered and continues to suffer due to each Defendant's improper actions.

127. Plaintiff was emotionally distraught and damaged, had difficulty sleeping, and difficulty staying asleep.

128. Each Defendant's actions have exacerbated, enabled, and lengthened the impact of the identity thief's crimes against Plaintiff.

129. Plaintiff was left with no choice but to institute the instant proceeding.

## FIRST CAUSE OF ACTION
### (Violations of the FCRA as to the Bureau)

130. Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

131. This is an action for willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

132. The Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that the Bureau maintained or furnished concerning the Plaintiff.

133. The Bureau violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute(s) and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

134. The FCRA has provisions that specifically govern disputes based on identity theft, yet the Bureau failed to comply with those provisions.

135. When Plaintiff alleged identity theft and sent a valid identity theft report that was filed with law enforcement, the Bureau was required to stop reporting the fraudulent information in the Plaintiff's credit report. See 15 U.S.C. §§ 1681c-2(a), 1681a(q)(4); 12 C.F.R. § 1022.3(i)(1).

136. The FCRA thus reflects congressional recognition that it is unreasonable for the Bureau not to block information that is contained in a credit report due to identity theft when the crime has been reported to law enforcement.

137. The Bureau further violated 15 U.S.C. § 1681c-2(a) (Block of information resulting from identity theft) by failing to block information in Plaintiff's credit report after receiving the Report.

138. The Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the Dispute to Furnisher or, in the alternative, if the Bureau did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnisher.

139. The Bureau willfully and recklessly, or in the alternative negligently, failed to comply with the Act.

140. The failure of the Bureau to comply with the Act include but is not necessarily limited to:

   a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

   b) The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

   c) The failure to promptly and adequately investigate information which the Bureau had notice was inaccurate;

   d) The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

   e) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised the Bureau to delete;

   f) failing to block information in Plaintiff's credit report after Plaintiff identified it as information that resulted from identity theft;

   g) failing to promptly notify the furnisher of information identified by Plaintiff as information that resulted from identity theft;

   h) The failure to take adequate steps to verify information the Bureau had reason to believe was inaccurate before including it in the credit report of the consumer; and

   i) The failure to provide notice of a dispute to the Furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the Furnisher in response to a dispute.

141. As a result of the conduct, action and inaction of the Bureau, Plaintiff suffered damage as described above.

142. The conduct, action and inaction of the Bureau was willful rendering the Bureau liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

143. In the alternative, the conduct, action, and inaction of the Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

144. Plaintiff is entitled to recover reasonable costs and attorney's fees from the Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

145. WHEREFORE, Plaintiff demands judgment for damages together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

## SECOND CAUSE OF ACTION
**(Violations of the FCRA as to Furnisher)**

146. Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

147. This is an action for willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

148. Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

149. Pursuant to the Act, Furnisher of disputed information must be notified by the credit reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

150. The Furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

151. The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the Furnisher must report the results to any other agencies which were supplied such information.

152. Upon information and belief, and as described above, Furnisher received notice of Plaintiff's dispute(s) from one or more of the credit reporting agencies (Experian, TransUnion and/or Equifax).

153. Furnisher violated 15 U.S.C. § 1681s-2 (b) as described above, including, but not limited to, failing to fully and properly investigate the dispute(s) of the Plaintiff, failing to review all relevant information regarding same, and failing to correctly report results of an accurate investigation to the credit reporting agencies.

154. Furnisher continued to report this information on the Plaintiff's credit report after being notified of the dispute(s) regarding the Account(s) as described above.

155. As a result of the conduct, action, and inaction of Furnisher, Plaintiff suffered damage as described above.

156. The conduct, action, and inaction of Furnisher was willful, rendering it liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

157. In the alternative, the conduct, action, and inaction of Furnisher was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

158. Plaintiff is entitled to recover reasonable costs and attorney's fees from Furnisher in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

159. WHEREFORE, Plaintiff demands judgment for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

## DEMAND FOR TRIAL BY JURY

160.   Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a) For actual damages provided and pursuant to 15 U.S.C. § 1681o (a) be awarded for each negligent violation as alleged herein;

b) For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

c) For statutory damages provided and pursuant to 15 U.S.C. § 1681n (a);

d) For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

e) For punitive damages provided and pursuant to 15 U.S.C. § 1681n (a)(2);

f) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n (a)(3), 15 U.S.C. § 1681o (a)(2) and 15 U.S.C. § 1640(a)(3); and

g) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated:  January 8, 2024

By:

*/s/ Blake Goodman*
Law Offices of Blake Goodman, PC
Blake Goodman, Esq.
Bar Number: 7436
900 Fort Street Mall, #910
Honolulu, HI 96813
(808) 528-4274
blake@debtfreehawaii.com

                                                <u>*s/ Eliyahu Babad*</u>
                                                STEIN SAKS, PLLC
                                                Eliyahu Babad
                                                One University Plaza, Suite 620
                                                Hackensack, NJ 07601
                                                (201) 282-6500 x121
                                                EBabad@SteinSaksLegal.com
                                                *Pending Admission Pro Hac Vice*

                                                *Attorneys for Plaintiff*